## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                  **No. CR  00-552 JP**

**PHILLIP LACOCK,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

On June 21, 2000 Defendant filed a motion to suppress (Doc. No. 15).  Having considered the parties' eleven subsequent briefs, the testimony at two hearings, a stipulation of facts, and the applicable law, I conclude that the motion should be denied.

### Background

The facts are not in serious dispute.  Defendant worked as a chef or cook at the Sally Port Inn in Roswell, New Mexico.  On October 12, 1998 Defendant resigned, or agreed to resign within the week, apparently in response to a demand or request by the Sally Port Inn.  Defendant then went to the kitchen at the Sally Port Inn.  A Sally Port Inn employee who also worked in the kitchen, Rick Spicer, saw Defendant stack onto a Sally Port Inn cart items such as pots, pans, a box of Tide, a butcher's steel or sharpening stone, and room service condiments.  Spicer then saw Defendant head down a hallway leading to an exit door and then return a few minutes later with an empty cart.  Spicer also saw Defendant enter the chef's office in which there were some employee files.  Later, those files turned up missing.

At some point during the time Defendant was loading items onto a cart, Spicer told Defendant that he should not be taking them. Defendant replied that the things were his. After these events, Spicer apparently reported what he had observed to John McCullough, manager of the Sally Port Inn. McCullough contacted the Roswell Police Department. Roswell Police Department Officer Jeff Tutor took a report, not in evidence, indicating that "the Sally Port Inn . . . had reported an embezzlement over $250.00 on 10-12-98." (Search Warrant Aff. A. ¶ 3, Ex. 1.)

That report eventually found its way to Detective Rodney Morris of the Roswell Police Department. On or about November 30, 1998, Det. Morris contacted McCullough and Spicer. Based on Officer Tutor's report and his conversations with McCullough and Spicer, Det. Morris on December 1, 1998 presented his affidavit and a proposed search warrant to Chaves County Magistrate Court Judge Billy V. Carpenter. Magistrate Judge Carpenter signed the warrant authorizing agents to search Defendant's residence for one butcher's steel, one seven inch egg pan, two stock pots, four two-piece cake pans, a bag of individually packaged condiments, one box of Tide, and any personnel files or event calendars belonging to the Sally Port Inn.

Officers executed the warrant on the same day. They seized two stock pots and a butcher's steel from the kitchen of Defendant's home. From elsewhere within the home, officers seized a box of Tide, a folder with paperwork (apparently not personnel files) belonging to the Sally Port Inn, and a cigar box containing what officers described as "drug paraphernalia" (a characterization which Defendant disputes). While in Defendant's house, police officers additionally encountered an 18" x 18" metal box labeled "Danger, Do Not Open." They opened it. Inside they observed what appeared to be rocks, gun powder, matches, and firecrackers.

Officers did not seize the box or its contents at that time.  Instead, they left to get another

warrant.  After a second warrant was issued for the metal box, the officers returned to

Defendant's home and took the metal box on their second trip.

No charges were ever brought against Defendant based on the kitchen items, detergent,

the file folders, or the drug paraphernalia.  Apparently the domestic items seized were

Defendant's (except for the stock pots which belonged to his landlord.)  Defendant describes the

kitchen items taken from the Sally Port Inn as his own tools of the trade and menu plans, which he

brought with him to his job at the Sally Port Inn, was entitled to take when he left, and had in fact

taken to his new job at the time of the execution of the warrants.  The present case stems from

seizure of the metal box.

Defendant moves to suppress the metal box, its contents, and his post-<u>Miranda</u> statement

that he had made the metal box and placed its contents inside the box.  He argues that (1) in order

to issue a search warrant, the alleged crime must be a felony, (2) the affidavit offered in support of

the warrant lacks evidence of probable cause to believe that Defendant embezzled the missing

items, (3) the affidavit lacks evidence of probable cause to believe that the missing items would be

located in Defendant's home, (4) the information in the affidavit was stale, resulting in a lack of

probable cause to believe the items would be in Defendant's home as of December 1, 1998 and

(5) Detectives were not authorized to look in the box or venture beyond the kitchen.  The

government contests all of these contentions and adds that even if the warrant is supported by

something less than probable cause or by stale information, the executing officers relied upon it

and executed it in good faith.  The government has also presented evidence that Defendant, as a

condition of two terms of probation imposed by two California state court judges, had agreed to

submit to warrantless searches, and uses this evidence to argue that even if defective, the warrant here was unnecessary and is irrelevant.

## Analysis

**I.     Issuance of a warrant only for a felony offense**

The warrant in this case authorized a search for what Det. Morris values in the affidavit as $289.00 worth of property.  In a paragraph of two sentences, Defendant first argues that search warrants can only issue for felonies.  He cites no authority in support.  In the second sentence, Defendant argues that the total value of the items officers suspected Defendant had embezzled was actually less than $250.00 and that Det. Morris' estimate of $289.00 is a sham.

Although he did not cite it, Defendant appears to have in mind N.M. Stat. Ann § 30-16-8, which classifies embezzlement of property worth less than $250.00 as a misdemeanor.  However, Defendant has not presented any evidence to suggest that the $289.00 value Det. Morris placed on the items to be seized is false, much less that Det. Morris acted maliciously or recklessly in making the valuation.  Moreover, he has not directed the court's attention to any statute or case suggesting that search warrants cannot issue for misdemeanor offenses.  In fact, the rule under which this particular search warrant was issued contains no such limitation.  See NMRA 6-208; see also Fed. R. Crim. P. 41(b).

**II.     Probable cause**

Defendant also contests the existence of probable cause.  The Supreme Court has defined probable cause as "a fair probability that contraband or evidence of a crime will be in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Finnigin, 113 F.3d 1182, 1185 (10th Cir. 1997).  An affidavit in support of a search warrant must illustrate the

existence of probable cause by setting forth "sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." United States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998).  The task of the magistrate judge "is to make a 'practical, common-sense decision' based on the totality of the circumstances as set forth in the affidavit."  Id. (quoting Gates, 462 U.S. at 238, citing United States v. Corral-Corral, 899 F.2d 927, 931 (10th Cir. 1990)).  The duty of a court reviewing the decision of the magistrate "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  Gates, 462 U.S. at 238 (internal quotation omitted).

### A.    Evidence of ownership and embezzlement

#### 1.    Det. Morris

Defendant contends that the affidavit fails to indicate that the two reporting witnesses did not work at the Sally Port Inn when Defendant first began working there and therefore they did not know what items Defendant brought to the job.  Defendant adds that the affiant did not ask the two reporting witnesses who owned the items sought.  Defendant couches his objections concerning these omissions in terms of Delaware v. Franks, 438 U.S. 154 (1978).  In Franks, the Supreme Court held that if a defendant demonstrates by a preponderance of the evidence that an affiant perjured himself or showed reckless disregard for the truth in the affidavit, and resulting false material is deleted, the remainder of the affidavit must support a finding of probable cause for the warrant to be valid.  See Franks, 438 U.S. at 156.  An affiant's negligence or innocent mistakes do not support the remedy Defendant seeks.  See id. at 171.  Claiming that Franks also directs courts to add to an affidavit information which an affiant intentionally or recklessly conceals, Defendant would have the court read the affidavit in this case to include the information

that McCullough and Spicer did not work at the Sally Port Inn when Defendant began his employment there and that they were not asked who owned the missing items.  Defendant says that once this is done, the court must conclude that the affidavit did not establish probable cause to believe that the Sally Port Inn owned the items.

Defendant has not met his burden under <u>Franks</u>.  First, although the rule Defendant derives from <u>Franks</u> is supported, <u>see</u> <u>Stewart v. Donges</u>, 915 F.2d 572, 582 (10th Cir. 1990), Defendant has not shown that Det. Morris swore out the affidavit in this case knowing it to lack vital information or with reckless disregard for the truth.  In applying <u>Franks</u>, the court is not constrained by the four corners of the affidavit or by what information the magistrate had before him.  Rather, the court is required to hold an evidentiary hearing to probe the affiant's veracity. <u>See</u> <u>Franks</u>, 438 U.S. at 155-56.  Nothing at either of the two hearings, or in anything presented to the court, supports an allegation that Det. Morris acted intentionally or recklessly to conceal facts from Magistrate Judge Carpenter.  What Defendant suggests is that Det. Morris recklessly assumed that there was probable cause to believe that Defendant possessed fruits of a crime when the manager of the Sally Port Inn and a person who witnessed Defendant carry kitchen implements away from the Sally Port Inn kitchen caused an embezzlement complaint to filed. Det. Morris' assumption, however, was under the circumstances actually quite reasonable.  His information came from not just a man who worked in the kitchen with Defendant but also from the manager of the establishment.  Det. Morris read the allegations in the police report, followed them up with fresh interviews of the two complainants, and even recorded in the affidavit Defendant's statement to Spicer that the items taken belonged to Defendant.  Contrary to what Defendant contends, it is simply not so widely known that cooks or chefs take their pots and pans

with them from job to job that the court must conclude that Det. Morris intentionally or recklessly concealed important information from Magistrate Judge Carpenter. <u>Franks</u> does not provide a remedy for recklessness on the part of people other than the affiant nor does it require exhaustive investigation by, or even accuracy on the part of, the affiant. <u>See id.</u> at 164-65, 170. In short, it does not require any more than what Det. Morris did in this case.

Even if the affidavit had included the fact that neither McCullough nor Spicer worked with Defendant from the outset, Magistrate Judge Carpenter could have still found probable cause. <u>See</u> <u>Stewart</u>, 915 F.2d at 582 (recognizing that to make a difference, omitted information must be material). For instance, it would not have been unreasonable for Magistrate Judge Carpenter to have concluded that McCullough and Spicer gained knowledge concerning ownership of workplace items after they began working with Defendant, even though Defendant had worked at the Sally Port Inn longer. Indeed, it is reasonable to have expected Spicer as a kitchen co-worker of Defendant's to have such knowledge regardless of when he began working at the Sally Port Inn. It is equally reasonable to assume that McCullough, as the manager of the establishment, had similar knowledge. Thus, the addition of information about Defendant beginning work for the Sally Port Inn before McCullough and Spicer did, which Defendant claims the affiant wrongfully failed to include, is not critical.

Accordingly, the focus properly is on no more or less than the actual content of Det. Morris' affidavit. Contrary to what Defendant asserts, for the affidavit to withstand scrutiny, Magistrate Judge Carpenter did not have to assume that the Sally Port Inn owned the items at issue (although he could have). He only had to find that there existed "a fair probability that contraband or evidence of a crime" would be found. <u>See</u> <u>Gates</u>, 462 U.S. at 238. That is, there

only needed to be a fair probability that, inter alia, the Sally Port Inn owned the items Defendant

was thought to have embezzled.  The affidavit does contain information upon which Magistrate

Judge Carpenter could have found it fairly probable, and even virtually certain, that the Sally Port

Inn owned these items.  For instance, the items sought included Sally Port Inn personnel files.

About these there can be no serious ownership dispute.  The affidavit also contains information

upon which Magistrate Judge Carpenter could have concluded that the Sally Port Inn owned the

other items as well.  A magistrate judge is entitled, and even expected, to make reasonable,

common-sense inferences.  See United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998).

The affidavit plainly states that (1) the Sally Port Inn reported an embezzlement, (2) Det. Morris

contacted a kitchen co-worker of Defendant's who witnessed the events leading to the initial

report, and (3) Det. Morris contacted the manager of the Sally Port Inn.  Although the affidavit

does not state explicitly that the Sally Port Inn owned the items at issue, that was not necessary.

Magistrate Judge Carpenter could reasonably have assumed it was fairly probable that the Sally

Port Inn owned the items sought when a person who worked in the kitchen and the manager of

the establishment agreed that an embezzlement had taken place and reported it to the police.  That

the affidavit relates Defendant's contention that the items at issue were his does not defeat this

conclusion.  Magistrate Judge Carpenter was within his right to have weighed this contention

against the contrary evidence in the affidavit and then concluded that a fair probability existed that

evidence of crime might be in Defendant's possession.

### 2.      McCullough and Spicer

That McCullough and Spicer were apparently partially incorrect in their assessment of

who owned what is, of course, the root of Defendant's dismay.  Defendant suggests that Det.

8

Morris should have first conducted a more thorough investigation by contacting Defendant before pursuing a search warrant.  In this respect, Defendant raises by implication the issue of corroboration discussed at some length by the Supreme Court in <u>Draper v. United States</u>, 358 U.S. 307,  (1959) and again in <u>Gates</u>, 462 U.S. at 241-46 (recognizing that corroboration can contribute to a finding of probable cause under a totality of the circumstances).  Although Defendant does not cite to these cases or their progeny, or use their parlance, he essentially attacks Det. Morris' efforts to corroborate.

Defendant's challenge is problematic.  First, Det. Morris did follow up on the initial embezzlement report with interviews and in that way corroborated the police report, all of which he describes in the affidavit.

Second, and more importantly, there is nothing more Det. Morris could have been expected to do within reason.  He personally verified that Spicer and McCullough, the two people other than Defendant most likely to have a basis of knowledge, still supported the information they provided.  Spicer had worked with Defendant and witnessed the alleged taking, and McCullough supervised both men.  Defendant would have the court fault law enforcement for

Spicer's weak power of observation or bad intent and McCullough's managerial inadequacies.[1]
Nothing in the record suggests a reason for Det. Morris to have suspected that McCullough, the
manager of the Sally Port Inn, and Spicer, a person who worked in the kitchen with Defendant,
were being untruthful or did not have a basis of knowledge.  Det. Morris' efforts were under the
totality of the circumstances quite reasonable.  As noted previously, Spicer's and McCullough's
job positions alone, without a comparison of beginning employment dates, provides what
Magistrate Judge Carpenter could reasonably have concluded to be an adequate foundation for
their observations.

        Third, and of equal importance, the rule Defendant seeks is not a wise one.  Defendant
would have had officers first contact him before executing a search warrant.  In a case such as this
where, after the fact, no embezzlement appears to have occurred, such a rule has false appeal.  As
Det. Morris explained, when in previous cases he has tried searching for missing items by
obtaining the consent of the person believed to have taken them, his inquiries have been rebuffed
and resulted in missing property disappearing permanently.  This course is neither an effective way
of recovering property nor required by the Fourth Amendment.

_____

        [1] It is important to note that the only argument Defendant makes along these lines is that
Spicer and McCullough, as restaurant industry employees, should have known that chefs carry
their tools of the trade with them from job to job.  Even if this is information that Spicer and
McCullough should have known based on their work experience, it is not reasonable to assume
that Det. Morris or Magistrate Judge Carpenter, as people outside the food service field, should
have known it too.  To illustrate, it is worthwhile to examine what the affidavit does not state.
Defendant was not seen leaving his job following a forced resignation with, for example, a framed
photograph from a Sally Port Inn kitchen office desktop or a handwritten letter from a desk
drawer or a change of clothing from an employee footlocker.  These are examples of what most
people would consider to be personal items and which the court would much more likely place
within the common sense grasp of all involved as unconstitutional support for a warrant to search
for fruits of an embezzlement.

Defendant suggests that officers could eliminate the risk of property disposal, which their inquiries cause, by asking their questions with an arrest warrant in hand.  While this may be an imaginative option, Defendant has cited no authority requiring such a course, which does not appear to be a reasonable one.  Accordingly, I decline to establish that proposed new rule of law.

**B.     Evidence of location of items to be seized**

Defendant argues that the "bare bones" affidavit fails to establish probable cause to search Defendant's home.  The government points out that the affidavit records Spicer's observation of Defendant carting the items at issue down a hallway at the Sally Port Inn leading to an exit door then returning a few moments later with an empty cart.  From this, the government claims it is reasonable to conclude that Defendant took the things to his car.  The government also observes that the affidavit states that Det. Morris noted that a car registered to "Mr. Phillip LaCock of 1310 W. 7th" was parked in the driveway at that address.  From this, the government claims that it is reasonable to infer that Defendant took these items by car to that address and that the address is Defendant's residence.

Probable cause requires a nexus between the place to be searched and the items to be seized.  See United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997).  Neither direct evidence nor personal knowledge are necessary to establish a link between the items and the place.  See id.  "A nexus between the objects to be seized and the place to be searched . . .  is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched."  Id. (citations omitted).  A magistrate judge is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  See

11

Rowland, 145 F.3d at 1205 (quotation omitted).

In Rowland, for example, an affidavit suggested that the defendant would be picking up illegal videotapes at his post office box and had been seen on other occasions collecting his mail from the post office and then walking back to work. Id. at 1204. This did not establish probable cause to search his home for videotapes, however. That the tapes sought might be at his home was but one possible inference among an "otherwise unlimited" number of other possible viewing sites. Id. at 1205 (finding insufficient probable cause but upholding warrant on good faith grounds). The Tenth Circuit also faulted the district court for failing to address why it was logical to infer that the defendant would take the tapes home rather than somewhere else to view them. See id. at n.4.

On the other hand, the Tenth Circuit in United States v. Reyes, 798 F.2d. 380, 382 (10th Cir. 1986) found probable cause to search a defendant's residence in a drug conspiracy case even though the affidavit did not mention the defendant's residence. The assumption that records of drug activity would be there was reasonable. See Reyes, 798 F.2d at 382. Similarly, the Tenth Circuit in United States v. Anthony, 667 F.2d 870, 875 (10th Cir. 1982) upheld a warrant to search the defendant's residence for evidence of wiretapping equipment. In Anthony, the affidavit noted that (1) the defendant was arrested after arriving in a rental car, the agreement for which listed the address of the place to be searched, (2) the defendant later "gave that address" when he was booked and (3) the affiant had observed the place to be searched. See Anthony, 667 F.2d at 875. The nature of the evidence sought, equipment which would have required assembly which the defendant reasonably would have done at home, supported probable cause to search the defendant's residence. See id.

In another case, on which Defendant primarily relies, I found insufficient an affidavit to search a defendant's home. See United States v. Shaulis, Cr. No. 98-427 JP, Doc. No. 54 (Aug. 26, 1998).  In Shaulis, the affidavit stated that agents followed a defendant suspected of manufacturing methamphetamine "to the 'area' of" the address of the place to be searched. Shaulis at 5-6.  The affidavit did not indicate that anyone observed the defendant stopping or entering the residence at that address or that the defendant lived there or that there was any reason at all to believe suspicious activity was afoot there.  See id. at 6.  Thus, there was no probable cause to search the home at that address.  See id. at 7.

Defendant also relies on a Fifth Circuit case, United States v. Flanagan, 423 F.2d 745, 746 (5th Cir. 1970) (finding warrant to search Ft. Worth house illegal where affidavit stated only that defendant found in his car in Dallas with property stolen from Houston).  The Tenth Circuit has distinguished Flanagan.  See United States v. Anthony, 667 F.2d 870, 875 (10th Cir. 1981). Moreover, Flanagan was based on the now-outdated test described in Aguilar v. Texas, 378 U.S. 108 (1964).

As to Defendant's first objection, that it is unreasonable for Magistrate Judge Carpenter to have concluded that Defendant took the items at issue to his car, the court disagrees.  Spicer observed Defendant loading the items onto a cart at work, taking the loaded cart toward an exit to the outside, disappearing for a few minutes, and then returning with an empty cart--all of which Det. Spicer describes in his affidavit.  For Magistrate Judge Carpenter to have deduced that Defendant took the items to his car is a simple exercise of common sense.  Neither is it too great an inferential leap to conclude that there is a fair probability that Defendant then took the items in his car to his home.  Pots, pans, soap, condiments, and employee files are not the sort of items, for

instance, that would be quickly fenced for cash or secreted away or set up for use at some remote location.  That Defendant might instead have taken the material to a new job site is reasonable-- but not so much so that Magistrate Judge Carpenter could have reached no other conclusion.  The issue is not whether the items might have been elsewhere but whether under the totality of circumstances they might reasonably be found at the place to be searched.  See United States v. Brinklow, 560 F.2d 1003, 1006 (10th Cir. 1977).  Again, officers sought predominantly domestic kitchen items and Sally Port Inn paperwork.  Magistrate Judge Carpenter could have reasonably, and logically, found a fair probability that these would be at the Defendant's home.

Magistrate Judge Carpenter could also have concluded that Defendant's residence, where Defendant would use these kitchen items, is the address under which Defendant registered his vehicle.  The affidavit indicates that the vehicle records check tied the place to be searched--a specific address--to Defendant, in contrast with the affidavit in Shaulis.  And in contrast with the affidavit in Rowland, this affidavit focuses only on the home.  Thus, the information in the four corners of the affidavit is not a "bare bones" recital but a solid foundation upon which a series of reasonable, common sense inferences establish probable cause, as in Reyes and Anthony.

### C.   Evidence of timeliness

Defendant also argues that the information upon which the warrant was based does not create probable cause to believe that the items sought would be found in Defendant's home seven weeks after McCullough first reported an embezzlement at the Sally Port Inn.  Defendant's position is that it was unreasonable for Magistrate Judge Carpenter to have assumed that Defendant had not taken the items to a new job site or sold the items or stored them outside his home in the ensuing seven weeks.  The government's response to the length of time that passed is

14

that the items were not perishable.  The government also points out that Detective Morris re-interviewed McCullough before obtaining the first warrant.

In assessing whether there exists probable cause to believe that items to be seized will be found in the location to be searched, the Tenth Circuit looks to not just to the length of time between acquisition of the information upon which a warrant was based and its issuance but also the nature of the property, "in view of the practical considerations of every day life . . . [and] common sense."  Brinklow, 560 F.2d at 1005 (citations omitted).  Timeliness depends on "the nature of the underlying circumstances and concepts."  Reyes, 798 F.2d 380, 382 (10th Cir. 1986).  In Brinklow for instance there was probable cause to believe that radio equipment, a police scanner, and a notebook in which the defendant recorded mileage would still be in the defendant's mobile home eleven months after they were observed there.  See Brinklow, 560 F.2d at 1005.

Defendant is correct that seven weeks elapsed between Spicer's observations and McCullough's report and the execution of the warrant.  That Det. Morris did follow up with each man would not change the date on which they observed and reported the alleged embezzlement.  Further, the date on which the affiant personally contacted McCullough and Spicer is not indicated in the affidavit.  However, having already found that there was probable cause for Magistrate Judge Carpenter to have believed there was a fair probability that Defendant took the items at issue to his home, it is reasonable to conclude there was a fair probability that these items would still be there seven weeks later.

The warrant authorized the seizure of pots and pans for cooking, individual condiments, a box of Tide laundry detergent valued at over $50, and personnel files or event calendars.  As has

already been noted, it is not common knowledge that cooks carry items like these with them.

Thus, Magistrate Judge Carpenter need not have necessarily concluded that Defendant must have

taken these items to a new cooking job in the seven weeks that elapsed.  Similarly, Magistrate

Judge Carpenter need not have concluded that Defendant had found a new job as a cook so

quickly after his forced resignation.  Still further, the items at issue are not the sort of things

which Magistrate Judge Carpenter should have assumed would be taken other than to

Defendant's home for storage or sold within seven weeks of their removal from the Sally Port

Inn.  Instead, it is within the bounds of reason for Magistrate Judge Carpenter to have concluded

that the items, which are primarily kitchen implements and materials used in common domestic

tasks, would still be in the home.  The only consumable item Defendant took was the apparently

large box of Tide.  However, it is the sort of consumer good that will easily last more than seven

weeks for domestic use.  In sum, it was not wrong for Magistrate Judge Carpenter to have

considered the nature of the property at issue and concluded that there was a fair probability it

would still be in the home seven weeks later.

**III.     Good faith exception**

The Supreme Court in United States v. Leon, 468 U.S. 897 (1984), indicated that when

an officer relies upon a warrant issued by a magistrate, he is presumed to act in good faith.  See

United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993).  A magistrate's finding of

probable cause is entitled to deference.  See Leon, 468 U.S. at 914.  Deference is not boundless,

however.  The exclusionary rule will still apply in four instances.  See United States v. Danhauer,

229 F.3d 1002, 1007 (10th Cir. 2000).[2]

### A.      Alleged bar by New Mexico law

Defendant contends that the good faith exception cannot legally apply.  First, he

demonstrates that the New Mexico Supreme Court has found the good faith exception in Leon to

be incompatible with the New Mexico Constitution.  See State v. Gutierrez, 116 N.M. 431, 447,

863 P.2d 1052, 1068 (1993).  Then, he points out that state law enforcement officials executed

this warrant in New Mexico.  From this he argues that since a New Mexico state court would not

apply Leon to this case, for a federal court to do so would "deny or disparage" Defendant's state

constitutional rights in violation of the Ninth Amendment.  Intriguing as Defendant's Ninth

Amendment argument is, it is settled law, at least in the Tenth Circuit, that in federal cases federal

law governs whether a search by state officers is reasonable and that this is to be determined as

though federal officers had conducted the search.  See Preston v. United States, 376 U.S. 364,

366 (1964); Elkins v. United States, 364 U.S. 206, 223-24 (1960); United States v. Miller, 452

---

[2] Defendant explicitly relies on the first exception identified in Leon, 468 U.S. at 915, 923, derived from Franks and relating to deception on the part of the affiant.  (See Reply to the Gov's Resp. To Def's Mot. to Suppress at 4) (referencing Leon but not citing page.)  He equally explicitly disclaims the second exception in Leon, 468 U.S. at 915, 923, relating to a magistrate's lack of neutrality.  (See id. at 5.)  He then is rather clear that he argues for the third Leon exception, found at 468 U.S. at 915, 923, concerning insufficient probable cause in the affidavit.  (In fact he later claims that this alone is the "principal[]" reason why the good faith exception cannot apply.  (See Brief on Various Issues as Requested by the Court on September 27, 2000 at 4.)  Defendant then in summary proclaims that "the first, third and fourth" exceptions in Leon apply (See id. at 7) (emphasis added).  However, the exception which the Leon court identified fourth (the Tenth Circuit expressly numbered it four in Danhauer, 229 F.3d at 1007), applies to a warrant which is so facially deficient in its description of the place to be searched or the things to be seized that executing officers could not have reasonably believed it was valid.  Defendant makes no colorable contention that the place to be searched or things to be seized are inadequately described.  Indeed the warrant, which incorporates by reference the descriptions in the affidavit, is sufficient.  The affidavit need not have noted precise physical dimensions of each pot and pan sought or that some of the items Defendant took may have been marked.

F.2d 731, 733 (10th Cir. 1972); <u>see also</u> <u>United States v. Pforzheimer</u>, 826 F.2d 200, 202 (2d Cir.

1987).

Defendant also claims that to find against him promotes forum shopping.  However, he

presents no evidence that prosecutors proceeded in federal rather than state court to evade certain

state rights.  Moreover, it is highly questionable whether a state district attorney can forum shop

in the way Defendant uses the phrase.  Only federal prosecutors have the authority to initiate a

federal prosecution.  Still further, the results of Defendant's proposed disposition would turn our

federal system on its head in more ways than one.  Defendant would have federal rights in federal

court flex to conform with the expansion of state constitutional rights and create different

evidentiary law in the different federal districts.  This would be an inappropriate result.

### B.     Factual basis for application of good faith exception

Defendant also argues that there is no factual basis for application of the good faith

exception.  First, he says it cannot apply because the magistrate judge was misled by an affidavit

which Det. Morris knew was false or should have known was false but for his reckless disregard

for the truth.  <u>See</u> <u>Leon</u>, 468 U.S. at 923 (citing <u>Franks</u>).  Defendant in part incorporates by

reference his previous analysis of <u>Franks</u>.  Defendant adds a new attack on Det. Morris by

reference to Magistrate Judge Carpenter's lay status.  Defendant states, "[t]he knowledge of some

law officers of the lack of formal legal training by some magistrates is one of the factors that the

court may consider in evaluating the 'good faith exception' pled by the government."  (Def's

Reply at 4.)  Defendant then clarifies that he is not suggesting that an officer may not rely on the

probable cause determination of a non-lawyer magistrate.  As with Defendant's other arguments

under <u>Franks</u>, he has presented no evidence in support.  Contrary to Defendant's implication,

nothing suggests that Det. Morris sought out Magistrate Judge Carpenter with the aim of slipping

past him a search warrant that a magistrate judge with formal legal training would bounce for

failing to establish probable case.

Next, Defendant contends that no reasonable well-trained officer would have thought

probable cause existed.  Defendant's argument in support is substantially the same as that

addressed earlier with respect to probable cause: that nothing in the affidavit suggests that the

items officers sought would be in Defendant's residence.  For the reasons explained <u>infra</u>, the

court believes that the affidavit does establish a sufficient nexus between the items to be seized

and Defendant's home.  However, even if that analysis is flawed, there can be little question that

there is enough of a nexus, even if not sufficient to support probable cause, to find that Det.

Morris reasonably relied on the warrant.

<u>Rowland</u> is particularly instructive.  There the Tenth Circuit found that the affidavit in

support of a warrant to search a home lacked a sufficient nexus to the home, since it described

only how the defendant was likely to pick up contraband at the post office and then return to

work.  <u>See</u> <u>Rowland</u>, 145 F.3d at 1205-06.  Thus, it found the affidavit failed to establish probable

cause to search the defendant's residence.  <u>See id.</u> at 1206.  However, the affidavit was not so

lacking in facts to find that the officer unreasonably relied upon it.  <u>See id.</u> at 1207.  Because it

was reasonable to infer that the items sought--portable videotapes--might be at Defendant's home

and not just his workplace, the Tenth Circuit upheld the search.  <u>See id.</u>  <u>Cf.</u> <u>United States v.</u>

<u>Herron</u>, 215 F.3d 812, 814-15 (8th Cir. 2000) (finding no good faith basis to rely upon affidavit

to search for marijuana at residence where affidavit made no reference to marijuana at residence,

only incompletely described residence, and was prepared for the purpose of searching another

19

location).  Relying on Rowland, the court finds Det. Morris' reliance on the warrant to search for

domestic items in Defendant's home to be objectively reasonable.

     This conclusion comports with the rationale of Leon.  The exclusionary rule is to deter

police misconduct, not to punish magistrates.  See Rowland, 145 F.3d at 1206.  In Rowland, the

court noted that officers exhibited good faith by complying with the conditions of the warrant.

See id. at 1207 (noting officers waited until the items to be seized were brought into Defendant's

home, a condition to execution).  Here, officers seized what they believed fit the description in the

affidavit.  (See Sept. 27, 2000 Tr. at 20.)  In one instance, where the warrant listed an egg pan,

officers were unsure of what the affidavit described.  Instead of seizing items which officers

merely guessed to be an egg pan, officers chose not to seize anything under that particular

description.  (See id. at 19.)   This is an example of good faith search warrant execution.  As

another example of good faith, when officers happened upon the box which resulted in the present

federal charges, instead of seizing it, they left to get a second warrant, even though they may not

have needed one.[3]  See United States v. Sanchez, 89 F.3d 715, 719 (10th Cir. 1996) (upholding

seizure of item not listed in warrant where item is plainly incriminating and officers lawfully in

position to view and access item).  Where, as here, officers acted in good faith, suppression is

_____

     [3] Officers did not violate the "plain view" rule discussed in Arizona v. Hicks, 480 U.S. 321
(1987) by opening the 18" x 18" metal box that is the subject of Defendant's motion.  As officers
had not yet found the paperwork listed in the warrant, they opened the metal box permissibly.
See United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993).  For similar reasons, officers
also permissibly searched outside of the kitchen area.  Further, officers may have reasonably
opened a cigar box containing "drug paraphernalia" to check for papers.  However, I decline to
reach that conclusion since suppression of the cigar box and its contents is not at issue.  (Compare
Def's Mot. at ¶3 with id. ¶28.)  But, even if officers exceeded the scope of the search warrant by
opening the cigar box, there is no evidence of flagrant disregard for the terms of the warrant such
that all of the evidence seized must be suppressed or that Leon cannot apply.  See United States
v. Medlin, 798 F.2d 407, 411 (10th Cir. 1986).

inappropriate.

## IV.    Probation condition permitting warrantless search

The evidence is overwhelming that on February 2, 1996 California Superior Court Judge Peter L. Spinetta placed Defendant on probation for five years following Defendant's plea of guilty to a five count information, which included charges of stalking, terrorist threats, and possession of deadly weapons on an unspecified occasion or occasions.  Page three of the Order for Probation identifies the victim as Lynn Irene Lacock.  The evidence is also overwhelming that on March 14, 1996 California Superior Court Judge John C. Minney placed Defendant on probation for five years following Defendant's plea of guilty to count two of an amended criminal complaint charging Defendant with assault with a deadly weapon.  The Order for Probation indicates on page one that Defendant committed assault with a deadly weapon on or about November 29, 1995 and on page three identifies the victim as Lynn Irene Lacock.

One of the conditions of each term of probation required Defendant to submit his residence to warrantless searches by any peace officer at any time of the day or night.  The government claims that this condition eliminated any expectation of privacy Defendant might have had in his home, and thus, even if the warrant is defective and officers did not rely in good faith on it, the search should be upheld.  Having already found that the warrant was supported by probable cause, but that if it was not, the good faith exception operates to preclude suppression, I decline to reach the government's position with respect to Defendant's condition of probation.

IT IS THEREFORE ORDERED THAT Defendant's motion to suppress (Doc. No. 15) is denied.

_____

CHIEF UNITED STATES DISTRICT JUDGE