FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 1 4 2001

CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
) CRIMINAL NO. 00-552 JP
v. )
)
PHILLIP LA COCK, )
)
        Defendant. )
_____)

## MEMORANDUM OPINION

This matter is before the Court on the defendant's motion in limine for evidentiary hearing and to exclude junk science. The Court has reviewed the defendant's motion and memorandum and the government's response. A conference call was held on October 18, 2001 at which time counsel for both parties presented their positions orally. For the reasons stated herein, the defendant's motion in limine is denied.

Defendant Phillip La Cock ("defendant") is charged as follows: Count One charges that the defendant knowingly made a firearm, as defined in Title 26, United States Code, Section 5845, to wit: a destructive device, in violation of Title 26, United States Code, Sections 5822, 5861(f), and 5871; and Count Two charges that the defendant knowingly possessed a firearm, to wit: a destructive device, not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871. Defendant seeks to exclude the testimony of three of the government's experts – Bryant T. Hart, Michael Francis, and Michael Davies – because, he argues, the methodologies used by these experts in arriving at the



conclusions about which they plan to testify fail to meet the standards of Federal Rule of Evidence 702 regarding testimony by experts, as interpreted in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999). In addition, as to Mr. Hart, the defendant argues that his testimony too closely tracks statutory language, invades the province of the Court to instruct the jury as to the law, and thereby exceeds the scope of permissible testimony under Rule 702, pursuant to <u>United States v. Scop</u>, 846 F.2d 135 (2nd Cir. 1988). The defendant states that he "does not challenge the qualifications of Mr. Hart," but that he does challenge "his methodology, or absence thereof." Defendant's motion and memorandum, at 3.

Title 26, United States Code, Section 5845 (f) defines a destructive device as follows:

> The term "destructive device" means (1) any explosive, incendiary . . . (A) bomb . . . or similar device; . . .: and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; . . . .

The device in this case consisted of the following: (1) a file box with a separator in the middle; (2) three large rocks weighing approximately 18 pounds; (3) approximately 80 grams or 1200 grains of Pyrodex explosive, a black powder substitute; (4) twenty-six Blackcat firecrackers; (5) twenty-two matches; (6) three matches tied together with copper wire and the match heads were encased with additional crushed match heads; (7) a match striking pad bounded by duct tape encircled the three tied matches; and (8) loose change. The metal file box has a handle and a hinged lid, and the lid had a hole bored in the top. Through the hole was a wire that was attached to the three tied-together matches. The device contained a commercial explosive, and the overall design appears to indicate that the device was intended as a weapon.

2

Various courts have held that a device may fall within the definition of a "destructive device" even if it does not operate as intended. See United States v. Rushcamp, 526 F.2d 1380, 1382 (6th Cir. 1975); United States v. Evans, 526 F.2d 701, 707 (5th Cir.) (holding dynamite bomb to be "destructive device" even though government agents twice failed to detonate it), cert. denied, 429 U.S. 818 (1976); United States v. Ragusa, 664 F.2d 696, 700 (8th Cir. 1981) ("it is not necessary that the device actually function as intended"), cert. denied, 457 U.S. 1133 (1982).

In addition, Section 5845(f) does not require that the device be "highly destructive" or have the capability of causing "appreciable destruction." See United States v. Ruiz, 73 F.3d 949 (9th Cir. 1996) (holding that Section 5845(f) is not limited to devices that are "highly" destructive); United States v. Markley, 567 F.2d 523, 526 (1st Cir. 1977) (holding that destructive device does not have to be "highly" dangerous or destructive), cert. denied, 435 U.S. 951 (1978).

According to the government, experts in the field of destructive devices use the following methodology to determine whether a device is a device within the meaning of Section 5845(f). First, they look at the forensic chemist's report to determine if an explosive material has been identified in the device. Second, they examine the investigative reports to determine the circumstances surrounding the device, how and where it was found, and whether the defendant made any statement regarding the device. Third, an explosive enforcement officer uses the following criteria to make his determination as to whether the device is a destructive device as defined by the statute: (1) Does the device include a quantity of explosive material? (2) Is there some form of confinement? (3) Is there a means of initiation? (4) Was the device designed as a weapon?

The government represents that this methodology and criteria is used by all Bureau of Alcohol, Tobacco and Firearms (ATF) Explosive Enforcement Officers, that it has been in use since

3

the ATF Explosives Technology Branch (ETB) was established in the mid-1970s, and that it has been used in thousands of cases.

In this case, the forensic chemist's report indicates that the device contained Pyrodex explosive, a black powder substitute. The report also indicates that two cardboard match striker pads were constructed into an improvised tube, which would constitute part of an initiator, that the device had a bundle of three wooden-shafted matches wrapped together with copper wire, another part of an initiator, and that the match-head end of the bundle was encased in additional material consistent with crushed match heads, another part of an initiator. The report also indicates that the file box and its modified lid constituted the "confinement" and that the device was designed as a weapon, based on the victim-activated nature of the device.

Under <u>Daubert</u> and <u>Kumho Tire</u>, the Court must apply Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The factors that a court may examine in deciding whether FRE 702 is satisfied, according to <u>Daubert</u> and <u>Kumho Tire</u>, include: (1) whether a theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." However, the Supreme Court makes clear that the factors

4

mentioned in Daubert "do *not* constitute a 'definitive checklist or test.'" Kumho Tire, 526 U.S. at 150. Further, the Rule 702 inquiry is "a flexible one" that "must be 'tied to the facts' of a particular case." Id.

The Supreme Court noted that the trial judge must have "considerable leeway" in deciding in a particular case how to go about determining whether particular expert testimony is reliable. "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." Id. at 152.

While this Court has not found an opinion issued since Kumho Tire that addresses this precise issue – whether the methodology utilized by the ATF to determine whether a device is in fact a "destructive device" under Section 5845(f) is reliable under the Daubert and Kumho Tire standard – admission of evidence similar to that which the United States seek to present in this case has been affirmed in some cases since the Kumho Tire opinion was issued. In United States v. Langan, 263 F.3d 613 (6th Cir. 2001), the Sixth Circuit considered the evidence as to whether the bomb in question constituted a "destructive device" under the statute, including the testimony of the government experts, a forensic chemist and an explosives examiner, both employed by the FBI, and found the evidence sufficient to sustain the conviction. In United States v. Corey, 207 F.3d 84 (1st Cir. 2000), the First Circuit affirmed the trial court's admission of the testimony of two ATF agents related to where a weapon was manufactured that was based on corporate literature and reference materials maintained by the ATF, discussions with manufacturers, and their personal experience in law enforcement.

5

In <u>United States v. Nichols</u>, 169 F.3d 1255 (10th Cir. 1999), <u>cert. denied</u>, 528 U.S. 934 (1999), the Tenth Circuit examined a challenge to the trial court's allowing a forensic explosives expert give opinions about the size and type of bomb at issue. The district court had declined to hold a preliminary evidentiary hearing to determine whether the expert testimony met the standard of reliability set forth in FRE 702 and <u>Daubert</u>, but had reserved ruling on the admissibility until the evidence was offered at the trial. The Tenth Circuit noted that it had ruled previously, in <u>United States v. Call</u>, 129 F.3d 1402 (10th Cir. 1997), that <u>Daubert</u> does not mandate an evidentiary hearing, but that there must be "a sufficiently developed record" to allow the appropriate review. The Court of Appeals approved the trial court's reasoning that there is nothing prejudicial to a defendant in a trial court's "reserving ruling on the admission of the opinions and conclusions to be drawn from the testing until it is offered at trial . . . ." <u>Nichols</u>, 169 F.3d at 1263. It also approved the trial court's reasoning that "[a]ll of the necessary foundation must be proved and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted." <u>Id</u>. The Tenth Circuit also approved the trial court's "method of conserving judicial resources" by allowing much of the evidence to be presented to the jury, "since the accused has the right to have the jury hear evidence relevant as to weight and credibility of opinion evidence" and much of the same evidence is relevant to determine admissibility. <u>Id</u>. at 1263-64. After a thorough analysis, the Tenth Circuit held that the trial court's admission of the forensic expert's opinions satisfied FRE 702. <u>Id</u>. at 1265-66.

In a case decided after <u>Kumho Tire</u>, the Tenth Circuit makes it clear that the trial court "must, on the record, make *some* kind of reliability determination." <u>United States v. Velarde</u>, 214 F.3d 1204, 1208-09 (10th Cir. 2000). However, if the case is one in which the testimony at issue

6

constitutes an "ordinary case where the reliability of an expert's methods is properly taken for granted," as described in Kumho Tire, 526 U.S. at 152, and noted by the Tenth Circuit in Velarde, 214 F.3d at 1209-10, then the trial court may "avoid unnecessary 'reliability' proceedings." Id.

While it appears that this case may constitute an "ordinary case where the reliability of an expert's methods is properly taken for granted," given the general acceptance of the expertise of many ATF agents in the area of firearms and destructive devices and the state of the record at the time of the defendant's motion in limine, the trial court will be in the best position to resolve this issue, at the appropriate time. Pursuant to applicable Tenth Circuit case law, the defendant may renew his objections to the testimony at the trial and otherwise challenge the testimony as appropriate. The trial court will undoubtedly make the necessary determination as to the reliability and admissibility of the three government experts at the appropriate time and will limit the testimony as appropriate.

For these reasons, the Court denies the defendant's motion in limine for evidentiary hearing and to exclude junk science at this preliminary stage. An appropriate Order shall issue.

_____ _____
Date                     Senior United States District Judge Sitting by Designation