# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                            Cr. No. 00-552  JP

PHILLIP LA COCK,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On December 12, 2001, Defendant filed a Motion to Dismiss # 1 on Grounds that the Definition of "Destructive Device" is Unconstitutionally Vague As Applied to this Case (Doc. No. 84).  On July 23, 2002, at a hearing on Defendant's motion attorney Roger A. Finzel represented Defendant, who was present, and attorney Louis Valencia represented Plaintiff.  Having considered the parties' briefs, the testimony of the witnesses, the exhibits, and the relevant law, I will grant Defendant's motion on the grounds that Mr. La Cock's device was neither a weapon nor a destructive device under 26 U.S.C. § 5845 (f).

*Findings of Fact*

On December 1, 1998, police officers searched Defendant's home in Roswell, New Mexico for kitchenware and sundries that Defendant allegedly had stolen from the Sally Port Inn.[1] Once inside Defendant's bedroom police officers discovered a small metal file box, 11 inches high, 12.5 inches wide, and 10 inches deep.  Written on top of the box was the warning, "Danger Do Not Open."  The police officers called a bomb squad to disarm the box.

---

[1] Defendant has attacked the validity of the search warrant used to enter his home (Doc. No. 85), however, that motion is not addressed here.

The interior of the box had a metal divider that separated the inside of the box into two compartments, one slightly larger than the other. The larger side of the box contained three rounded river rocks weighing about 18 pounds. The smaller side of the box contained approximately 80 grams of Pyrodex powder scattered on the bottom. Pyrodex powder is a commercial substitute for traditional black gun powder. Twenty-six black cat firecrackers and wood matches were randomly mixed with the Pyrodex powder. Attached to the divider on the side with the Pyrodex powder was an initiator. The initiator was constructed of a small cylinder of duct tape lined with strike pads from matchbooks. Lodged inside the bottom of the cylinder were three wood matches, with a cluster of match heads glued onto them. These matches were bound together with a wire that was attached to the lid of the box. The initiator was designed so that when the lid of the box was opened, the wire would pull the match heads through the cylinder along the strike pads causing the matches to ignite.[2] The resulting flame would ignite the Pyrodex powder, which, in turn, would light the firecrackers.

Experiments demonstrated that an equivalent amount of Pyrodex powder similarly confined burns for approximately two seconds and produces a flame that reaches a height of six feet. Bryant Hart, an explosives enforcement officer with the Bureau of Alcohol, Tobacco Firearms, analyzed the box and concluded that the device could produce "thermal effects that are capable of causing property damage and injury." Pl.'s Ex. 18 at 1. When asked to compare the

---

[2] Defendant argues that as designed the initiator could not produce enough friction to actually light the matches. Defendant asserts that even if the matches did light the Pyrodex powder could not be ignited because the flame from the matches would be drawn away from the Pyrodex powder. Defendant's arguments that the device is inoperable as constructed are irrelevant to the analysis. *United States v. Johnson*, 152 F.3d 618, 628 (7th Cir. 1998) ("Shoddy workmanship cannot make a device that contains all the ingredients necessary to inflict harm, and to do nothing more, into something more benign.").

design and construction this device to other bombs he had investigated, explosives expert Michael

Davies stated that this "has been the only one [like it] that I have ever seen." Hr'g Tr. at 45, ll. 5-

6. Each explosives expert presented by the Government agreed that the design of this particular

device was "unique." Everyone who testified agreed that the Pyrodex powder scattered on the

bottom of the box could not explode. When ignited, the Pyrodex powder would just burn rapidly.

*Analysis*

Each count in the Government's Superceding Indictment (Doc. No. 74) rests on

Defendant having made or possessed a destructive device as defined under 26 U.S.C. § 5845 (f).[3]

By definition a destructive device must be a weapon, as the statute does not apply to "any device

which is neither designed nor redesigned for use as a weapon." Defendant's assertion that the

definition of a destructive device is unconstitutional as applied to his box is predicated on two

arguments: (1) the box here is not a weapon, and (2) the box does not explode, and thus is not a

destructive device.

---

[3] Under 26 USCA § 5845 (f), the "term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one- half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device."

Defendant first contends that his box is not a weapon, but rather a device "designed for use as a home intruder alarm." Def.'s Mot. to Dismiss at 6. The Government argues that the device is capable of causing personal injury or property damage, which makes it a weapon.

A court determining whether a device is designed as a weapon looks to the "physical structure or method of operation and not to intent or schemes of the possessor." *United States v. Posnjak*, 457 F.2d 1110, 1116 (2d Cir. 1972); *Johnson*, 152 F.3d at 626 (applying an objective standard). If the design is consistent with a legitimate social purpose, the statutory exception applies and there is no criminal liability. *Johnson*, 152 F.3d at 626 ("The ultimate issue in this inquiry is whether the device can be regarded as having 'no legitimate social purpose.'")(citing *United States v. Markley*, 567 F.2d 523, 527 (1st Cir. 1977)); *Posnjak*, 457 F.2d at 1116 (observing that "a device which otherwise appeared to fall within the statute would be exempted from its requirements if it could be shown that it was not designed as a weapon").

The Government characterizes the box as a booby trap, which produces flames capable of burning a person who opens it. The Government's expert on destructive devices, Bryant Hart, testified that bombs have three things in common: (1) a container, (2) an initiator, and (3) explosive material. Here the container is the box and the initiator is the combination of the matches and the strike pads. According to the testimony of the Government's witnesses, when any explosive material in the form of Pyrodex powder is placed inside the box, it becomes a weapon similar to a stationary bomb. And, even the presence of a thimble full of Pyrodex powder warrants classifying the device as a weapon because the burning Pyrodex powder would "damage the box." Hr'g Tr. at 97, l. 10.

To show that the device is an alarm, instead of a weapon, Defendant points to its signaling capabilities. When the box lid is opened, the Pyrodex powder loosely scattered on the bottom of the box would burn quickly, emitting a flash of light followed by a cloud of smoke. Def.'s Mot. to Dismiss at 5. Ignited by the Pyrodex powder, the 26 firecrackers then would make noise. Neighbors, alerted by the light, smoke, and noise, would call the police and report that something was amiss inside Defendant's home. Further, the box, which remains intact when the alarm is activated, was not designed to expel projectiles of any sort. Defendant asserts that because the box is clearly marked with a warning label only an intruder would open it.

By design, the Pyrodex powder in the box was not packed or confined in a manner that produces an explosion. As scattered about on the bottom of the box, the Pyrodex powder would simply burn quickly when ignited. The purpose of the flame created by the ignition of the Pyrodex powder is to light the firecrackers and create a flash of light. Though the flame may have some potential to cause harm, as did the homemade PVC firecrackers in *United States v. Worstine*, 808 F. Supp. 663, 670 (N.D. Ind. 1992) (holding that capped PVC pipes ½ inch in diameter and 3 to 4 inches long containing black powder were not weapons), and the incendiary grenades in *United States v. Homa*, 441 F. Supp 330, 332 (D. Colo. 1977), the device is by no means clearly designed for that purpose. The box cannot expel projectiles. The box is constructed to emit noise, light, and smoke. Viewed objectively, this admittedly "unique device" was not designed to be a weapon, but rather a signaling device in the form of an alarm as Defendant asserts. Thus, by definition the device cannot be a destructive device. *Posnjak*, 457 F.2d at 1116 (stating that "a device which otherwise appeared to fall within the statute would be exempted from its requirements if it could be shown that it was not designed as a weapon"); 26

U.S.C. § 5845 (f) (exempting signaling and pyrotechnic devices from the statute); *cf. United States v. Reed*, 726 F.2d 570, 576 (9th Cir. 1984) (holding that although "paper wrapped, gasoline filled beverage cans, with holes punctured in the tops" were capable of producing "great incendiary damage," they were not weapons);

Even if it were assumed that the box is a weapon, the Government would still have to overcome Defendant's second argument that, without explosive capabilities, the box is not a destructive device. The Superceding Indictment (Doc. No. 74) does not specify which one of the three subsections of 26 U.S.C. § 5845 (f) defines the destructive device that Defendant allegedly made and possessed. When asked at the hearing, Mr. Valencia stated that Defendant was being prosecuted under 26 U.S.C. § 5845 (f)(1), for making and possessing an explosive or incendiary bomb or similar device.[4]

Defendant argues that his box does not fall under this subsection because the Pyrodex powder in his box burns without producing an explosion. Defendant contends that since his box cannot make an explosion similar to that produced by a bomb, grenade, or mine, his box cannot be an incendiary bomb or similar device. *United States v. Podolsky*, 625 F. Supp. 188, 199 (N.D. Ill. 1985) (holding that a device that "would ignite and cause fire but not explode . . . . [i]n no way can [] be thought of as an 'incendiary bomb' or 'similar device'"); *Homa*, 441 F. Supp. at 332 (holding that incendiary grenades that could burn through steel at a temperature of 4330 degrees Fahrenheit were not destructive devices). The experts all agreed that as found in Defendant's box

---

[4] Section 5845 (f)(1) defines a destructive device as "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device."

the Pyrodex material will not explode, but rather will burn quickly in a chemical process called deflagration.

The Court of Appeals for the Tenth Circuit has not addressed whether a bomb or similar device must be capable of exploding in order to satisfy the definition of a destructive device under Section 5845 (f)(1). However, Judge Matsch of the District of Colorado within the Tenth Circuit has distinguished devices along these lines. *Homa*, 441 F. Supp. at 331-33 (holding that incendiary grenades are not destructive devices, but that grenades which can explode are). The Court of Appeals for the Sixth Circuit recently held that the only requirement for a destructive device "is that the device be capable of exploding or be readily made to explode." *United States v. Langan*, 263 F.3d 613, 625 (6th Cir. 2001) (addressing the nearly identical definition of "destructive device" under 18 U.S.C. § 921 (a)(4)(A)). Because the statute addresses military style weapons that by design do explode, the courts that have required the Government to show a device has explosive capabilities before criminal liability attaches under 26 U.S.C. § 5845 (f)(1) are correct in their analysis. As Judge Aspen opined in *Podolsky*, "If Congress had intended to cover any dangerous incendiary [under Section 5845 (f)(1)], it could have done so . . . . But it did not do so, and, until it does, we must read the word 'bomb' so that it retains some sensible meaning." *Podolsky*, 625 F. Supp. at 199 n.13 (addressing bombs and similar devices). Since Defendant's device was incendiary in nature and incapable of exploding it is not a destructive device within the meaning of 26 U.S.C. 5845(f)(1). Each Count in the Superceding Indictment is based on Defendant's box being a destructive device, so the Superceding Indictment will be dismissed in its entirety. *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).

IT IS THEREFORE ORDERED that:

(1)  Defendant's Motion to Dismiss #1 on Grounds that the Definition of a Destructive Device is Unconstitutionally Vague As Applied to this Case (Doc. No. 84) is GRANTED on the grounds that Defendant's box is neither a weapon nor a destructive device;

(2)  the Superceding Indictment (Doc. No. 74) is DISMISSED;

(3)  all pending motions are moot.


_____
CHIEF UNITED STATES DISTRICT JUDGE